## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

GEORGE A. BARNHART,

      Plaintiff,

v.                                        Case No. 2:13-cv-01684

RACHEL ELLIOTT,
JEFF STINETT,
BRIAN GREENWOOD, and
JIM RUBENSTEIN,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

On January 17, 2013, while incarcerated at the Ohio County Correctional Complex, the plaintiff filed a Complaint, pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The plaintiff has since been released from custody and has been permitted to proceed without prepayment of fees and costs, with no further filing fee required. (ECF No. 27.)

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### THE PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff's Complaint alleges that, while he was placed in the Charleston Work Release Program, he was punished for refusing to attend a required class on a Sunday, and was subsequently transferred back to a correctional facility and placed in administrative segregation for 30 days. He further claims that this action resulted in the

loss of his parole eligibility date.   The plaintiff further alleges that this conduct interfered with his religious worship.  The Complaint states:

> I was punished for refusing to attend class on a Sunday, which I told them was my Sabbath, and day of religious worship.    I was transferred to another facility and placed in segregation for 30 days and lost my parole date, job and outside clearance.  Rachel Elliott was teaching class and wrote me up for refusing to attend on Sunday.  Brian Greenwood was hearing officer who directed punishment.   Jeff Stinnett was administrator who denied appeal, Jim Rubenstein was Commissioner of W.V. Division of Corrections who denied 2nd appeal.
>
> I informed all party's [sic; [parties] that this was all due to my religious beliefs and asked if I could do class work on any other day but Sunday to no avail.  I also stated in the hearing that this was due to my religious beliefs, and also in all other appeal means afforded me thru [sic; through] W.V. Division of Corrections grievance procedures.  I offered to attend class or do classwork to make up for this incident on any day other than Sunday, but was punished rather harshly for my religious beliefs.

(ECF No. 1 at 4-5.)  The plaintiff seeks monetary damages and a removal of the incident from his West Virginia Division of Corrections ("WVDOC") records, a change in their procedures, and a written apology, as well as fees and costs.  (*Id.* at 5.)

On April 8, 2013, the defendants filed a Motion to Dismiss (ECF No. 14.) and a Memorandum of Law in support thereof (ECF No. 15.)  The Memorandum of Law asserts that the plaintiff has not identified his religion or religious beliefs or practices for which he claims he was punished.  (ECF No. 15 at 1.)  The Memorandum further asserts that the plaintiff's claims against the defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.  (*Id.* at 3-4.)   The Memorandum further asserts that the allegations in the plaintiff's Complaint are insufficient to state a claim under the standards set forth in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  The Memorandum specifically states:

> Here, the Plaintiff makes no specific allegations of a violation of any constitutional right against the Defendants.   Again, the Plaintiff has

neither identified his religion, nor the religious beliefs or practices for which he was allegedly punished.  Moreover, there is no allegation that any religious belief was restricted by Defendants . . . .  Instead of making specific allegations, Plaintiff has made conclusory statements with no well-pleaded facts to permit the Court to infer more than the mere possibility of misconduct.  For example, he simply alleges that Defendant Elliott wrote him up for refusing to attend a class on a Sunday.  Plaintiff provides no facts or reasoning as to why Defendant Elliott would have punished Plaintiff because of his religion.

Moreover, Plaintiff is suing the hearing officer, Defendant Greenwood, because he ruled adversely against him.  There is no specific allegation as to how Defendant Greenwood violated Plaintiff's rights.  Similarly, Plaintiff has failed to make any particular allegation against Defendants Stinnett and Rubenstein other than they denied his appeals.  As such, the Complaint must be dismissed as a matter of law against Defendants.

(*Id.* at 4-5.)[1]

On April 19, 2013, the plaintiff filed a letter-form Motion to Extend Time to Respond to the defendants' Motion to Dismiss, and a Motion for Appointment of Counsel.  (ECF No. 17.)  At the time that this motion was filed, the plaintiff had been released on parole, and sought additional time to find counsel to represent him and to file a response to the pending Motion to Dismiss.

Before the court entered an order granting the plaintiff's Motion to Extend Time, the defendants filed a "Reply" brief.  (ECF No. 20.)  In this Reply, the defendants confirmed that the class that is the subject of the Complaint was an "Aladrue" class, which is a three-tiered non-residential substance abuse program for offenders in various stages of drug/alcohol abuse and addiction.  (*Id.* at 1 n.1.)  The defendants' Reply further states:

---

[1]   Initially, there was a discrepancy about the day of the week on which the class occurred.  The defendants' Memorandum suggested that February 6, 2011 was a Monday.  Subsequently, however, the defendant agreed with the plaintiff that February 6, 2011 was, in fact, a Sunday.  (ECF No. 20 at 1.)

In terms of the class, Plaintiff had previously signed an Individual Reentry Program Plan agreeing to participate.  (*See Consent Form* attached as Exh. 1).  Thus, he was a willing participant in the program.

By Memorandum dated February 1, 2011, Plaintiff and other inmates were advised the subject class was going to be held on Sunday, February 6, 2011 from 1:00 p.m. until approximately 4:00 p.m.  (*See Memorandum* attached as Exh. 2).  In the Memorandum, all inmates enrolled in the class were advised  "If you do not have permission to miss class, **you will face disciplinary action."**  *Id.*  Plaintiff did [not] seek permission to miss the class for any reason, including his religious beliefs.

Instead, on February 6, 2011, Plaintiff showed up late for class at 2:00 p.m.  (*See Violation Report* attached as Exh. 3).  Plaintiff advised the class instructor, Defendant Elliott, that he had forgotten about the class.  Defendant Elliott explained to Plaintiff that this was the second time he had missed class and asked Plaintiff to leave.  Defendant Elliott then issued a Violation Report against Plaintiff for violating Policy Directive 325.00, Rule No. 2.03 for refusing to attend work or class.  (*See Violation Report* attached as Exh. 3).

Previously, on October 26, 2010, Plaintiff signed a Certificate of Understanding that a violation of any rule or regulation within the Charleston Work Release Center Handbook will be considered a violation of Policy Directive 325.00 which states "No inmate shall refuse to obey an order, instruction or assignment."  (*See Certificate of Understanding*, attached as Exh. 4).

On February 11, 2011, Defendant Greenwood conducted a hearing as to the merits of the Violation Report against Plaintiff.  Defendant Elliott and Plaintiff both testified at the hearing.  (*See Hearing Report*, attached as Exh. 5).  According to the Hearing Report, Plaintiff indicated he had honestly forgotten about the class; he took a pass before the class and went to Family Dollar and Dollar General; he stated he did not go to church that day; he had not attended church since arriving at the Charleston Work Release Center; he left the class when asked to leave; he did not create a disturbance in the class; he was late because he did not get back in time from his furlough; he believed Defendant Elliott did not like him; and he asked if there was anything he could do to make up for missing the class.  Based upon the testimony presented, Defendant Greenwood found that Plaintiff violated Rule No. 2.03.  Plaintiff was sentenced to thirty (30) days punitive segregation and thirty (30) days loss of privileges to begin February 7, 2011, and end March 9, 2011.  He was ordered to pay restitution of $237.65.  *Id.*

Plaintiff appealed the decision to Defendant Stinnett.  On February 24, 2011, Defendant Stinnett denied the appeal.  (*See Memorandum*

attached as Exh. 6).   Defendant Stinnett noted that Plaintiff had been disciplined for the same infraction before.   He also noted there were no requests on file where Plaintiff requested to attend worship services.   *Id.* Plaintiff filed an appeal with Defendant Rubenstein, who denied the appeal.

Nevertheless, Plaintiff has sued the Defendants claiming that he was punished for refusing to attend a class at the Charleston Work Release Center on a Sunday, a day of his religious worship.   As discussed below, Plaintiff's claims must be dismissed as a matter of law.

(ECF No. 20 at 1-3.)

On June 7, 2013, the undersigned granted the plaintiff's letter-form Motion for Extension of Time to Respond and gave the plaintiff until June 21, 2013 to file a response (noting that, at that time, two months had passed since the plaintiff's release on parole, in which he had time to meet with attorneys and/or to draft his own response to the pending Motion to Dismiss.)  (ECF No. 23.)

On June 17, 2013, the plaintiff filed a letter-form response (ECF No. 24), in which he summarily stated that the defendants' motion should be denied, that he did not have to identify his religion, and that he was not seeking relief from the defendants as government officials, but rather as individuals.  (*Id.* at 1-2.)  The plaintiff's response also listed an attorney, Dean Furner, of Parkersburg as plaintiff's counsel.  (*Id.* at 2.)  The undersigned's staff subsequently contacted Mr. Furner and, after giving him time to consider the matter, determined that Mr. Furner would not be representing the plaintiff. No additional response has been received from the plaintiff.[2]

On June 28, 2013, the defendants filed a Supplemental Reply, addressing the plaintiff's letter-form response.   The defendants' Supplemental Reply reiterates the

---

[2]   As will be addressed in a separate Order, there is no right to appointment of counsel in a civil matter such as this one, and the undersigned has determined that, although  the plaintiff has the ability to litigate this matter on his own, his Complaint fails to state a colorable claim.  Accordingly, there is no basis for appointment of counsel.

arguments made in its prior Memorandum of Law and Reply briefs that the plaintiff's Complaint fails to state a claim upon which relief may be granted against the defendants in either their official or individual capacities.  (ECF No. 26.)  The Supplemental Reply further notes that, despite the plaintiff's contention to the contrary, the plaintiff's requests for injunctive relief, such as removal of the disciplinary action from his record, and his requests for changes in policy and a written apology, can only be granted against the defendants in their official capacities.  (*Id.* at 2.)  The Supplemental Reply further addresses the individual claims against each defendant and asserts that they cannot succeed.

### **STANDARD OF REVIEW**

#### *Motion to Dismiss Standard*

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a

6

legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.
* * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## *Conversion to Motion for Summary Judgment*

It is appropriate, however, given the exhibits attached to defendant's briefs, to resolve this case pursuant to Rule 56, Federal Rules of Civil Procedure, and not as a motion to dismiss.  Rule 56(a) of the Federal Rules of Civil Procedure provides that '[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Summary judgment is properly granted where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *see also, Atkinson v. Bass*, 579 F.2d 865 (4th Cir. 1978), *cert. denied,* 439 U.S. 1003 (1978).

"[T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem)."  *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980); *see also, Ross v.*

*Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985); *Scott v. Greenville County*, 716 F.2d 1409, 1411 (4th Cir. 1983).

## ANALYSIS

### A.    Claims against the defendants in their official capacity.

The defendants assert that the plaintiff is attempting to sue them in their official capacities, and that they are immune from suit in this federal court under the Eleventh Amendment.   (ECF No. 15 at 3-4; ECF No. 20 at 3-5.)   The plaintiff's response affirmatively states that he is not suing the defendant in their official capacities, but only as individuals.   (ECF No. 24 at 1.)   The defendants' Supplemental Reply asserts, however, that the court should analyze the allegations in the Complaint to determine whether the allegations support individual or official capacity claims.  (ECF No. 26 at 1.) Their Supplemental Reply further states:

> Indeed, "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1993).  In *Biggs*, the Fourth Circuit identified a number of factors used to distinguish between individual and official capacity suits.  These include whether the plaintiff alleges that the defendant acted in accordance with state policy or custom, whether [he] seeks punitive or compensatory damages, and the nature of the defenses raised.  *Id.* at 61.

> Here, Plaintiff seeks $75,000 in lost wages, removal of any reference of this incident from his Division of Corrections ("DOC") records, a change in DOC procedures to prevent a similar incident, a written apology, and attorneys fees and costs.  A majority of the relief sought by the Plaintiff is injunctive in nature, which is only available against Defendants in their official capacities under a § 1983 action. Indeed, he wants removal of the incident from his records, change in DOC policy, and a written apology.  The fact that the Plaintiff wants the incident removed from his records and a change in DOC policy is strong evidence that Defendants have been sued in their official capacities because the Defendants would not be authorized to take such actions in their individual capacities.  Moreover, it is important to note that Plaintiff has not alleged malicious conduct or sought punitive damages, which would

8

only be available in individual capacity suits.  In terms of the nature of the defenses raised, the Defendants have asserted Eleventh Amendment immunity, which supports an interpretation that the claims are official capacity.  Ultimately, in analyzing the factors for distinguishing individual or official capacity claims, it is clear Defendants have been sued in their official capacities as employees of the DOC.  As such, Plaintiff's claims must be dismissed.

(*Id.* at 1-2.)

The undersigned agrees that, to the extent the plaintiff is seeking various forms of injunctive relief, those claims are properly addressed as claims against the defendants in their official, rather than their individual, capacities.  However, the plaintiff also seeks monetary relief, which can be construed as relief sought from the defendants in their individual capacities.  Furthermore, the plaintiff's statement that he is only suing the defendants in their individual capacities could be construed as an abandonment of his claims for injunctive relief.  Nevertheless, as will be explained in greater detail below, the plaintiff's Complaint fails to state any claims upon which relief may be granted against the defendants in either capacity.

### *Claims for monetary relief*

As noted by the defendants, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  The Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh

Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

Among other forms of relief, the plaintiff is seeking retroactive monetary relief from State officials in this matter, which is barred by the Eleventh Amendment of the United States Constitution.   For this reason, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which monetary relief can be granted against the defendants in their official capacities.

<em>Claims for injunctive relief</em>

Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.  *Id.* at 337.  However, the plaintiff's entitlement to such relief turns upon the success of the substantive claims in his Complaint.  As will be further addressed below in the section on the liability of the defendants in their individual capacities, the plaintiff's Complaint fails to state a constitutional violation based upon the plaintiff's exercise of his religious beliefs.  Accordingly, the defendants are entitled to judgment as a matter of law on both the plaintiff's claim for damages in their individual capacities, and all of his claims for injunctive relief.

**B.    The plaintiff's claims for monetary damages against the defendants individually and claims for injunctive relief.**

The plaintiff's Complaint is premised upon the defendants' alleged interference with the plaintiff's right to practice his religion.  However, the plaintiff has not identified the statutory or constitutional basis for his claim.  There are two avenues with which the plaintiff may raise a claim concerning a defendant's alleged violation of his religious rights.

Under the Free Exercise Clause of the First Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, a prisoner's right to practice his or her religion may only be restricted upon the showing that such restriction is reasonably related to a legitimate penological interest. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Turner v. Safley*, 482 U.S. 78, 84 (1987). "This approach ensures the ability of corrections officers 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration' [citation omitted] and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to 'resolution by decree.'" *O'Lone*, 482 at 349-350 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). Thus, federal courts are counseled to exercise judicial restraint in matters of prison administration. *Turner*, 482 U.S. at 89. Thus, a First Amendment claim turns on the reasonableness of the restriction, and allows the court to consider whether there are ready alternatives to accommodate the prisoner's religious rights. *Id.* at 90-91.

In 2000, Congress enacted the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-1 *et seq.* Section 3 of RLUIPA governs restrictions on religious exercise by institutionalized individuals by state or local governments. RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1)  is  in furtherance of a compelling governmental interest; and (2)  is  the  least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Act defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. §

2000cc-5(7)(A).  A "substantial burden on the religious exercise of a person" "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'"  *Smith v. Ozmint*, 578 F.3d 246 (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).  Again quoting from *Lovelace*, the *Smith* decision noted that courts may "not judge the significance of the particular belief or practice in question."  *Lovelace,* 472 F.3d at 187 n.2.  *Id.*  Under RLUIPA, the plaintiff is prohibited from pursuing monetary damages from any of the defendants in their official capacities.  *See Sossamon v. Texas*, ____ U.S. ____, 131 s. Ct. 1651, 179 L Ed.2d 700 (2011); *Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006). Furthermore, in *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009), the Fourth Circuit held that a prisoner cannot rely on RLUIPA's spending clause basis to pursue a claim for individual capacity damages.  Thus, the plaintiff would be limited to seeking only injunctive relief on a RLUIPA claim.

Regardless of the basis for the plaintiff's claims, however, the undisputed evidence of record does not support a finding that there was a violation of the plaintiff's attempts to exercise his religious beliefs.  First, the plaintiff has failed to identify what religious beliefs he believes to have been infringed.  The plaintiff's reply states that his religion and/or religious beliefs were sufficiently identified in the transcript from the disciplinary hearing before defendant Brian Greenwood, the institutional magistrate. However, the transcript is not a part of the record before this court.  Furthermore, it is apparent from the evidence that was provided by the defendants that the plaintiff was not engaged in any religious activity on the day that he missed the class in question, that

he had not partaken in any religious activities during his time at the Charleston Work Release program, and that he did not follow the outlined procedures for requesting permission to miss the class. In fact, the undisputed evidence of record demonstrates that the plaintiff received a pass to leave the facility, that he went to Family Dollar and Dollar General, and that he simply forgot about the class. According to the disciplinary hearing report, the plaintiff acknowledged that he did not go to church that day and that he had not been to church since he arrived at the Charleston Work Release Center. Defendants Stinett and Rubenstein relied upon these facts in affirming the disciplinary action and denying the plaintiff's appeals.

Even if the plaintiff could establish any restriction or substantial burden upon his right to practice his religion as a result of the defendants' conduct, the evidence of record demonstrates that the requirement of attending the Aladrue class is reasonably related to a legitimate, if not compelling, penological interest of rehabilitating prisoners and preparing them for re-entry into the community. Moreover, the plaintiff was given clear notice by defendant Elliot that all of the inmates enrolled in the Aladrue class were expected to be in the class from 1:00 p.m. to 4:00 p.m. on February 6, 2011, unless they received written permission from a staff member or doctor to miss class, and that they would be subject to disciplinary action if they missed class without authorization. Thus, the plaintiff had a procedural course to have his absence approved, in order to engage in religious exercises, which he failed to pursue.

Based upon the undisputed evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to establish a violation of his right to exercise his religious beliefs, either under the Free Exercise Clause of the First Amendment or under the RLUIPA. Accordingly, the undersigned further proposes that

the presiding District Judge **FIND** that the defendants are entitled to judgment as a matter of law on the plaintiff's claims for monetary damages against them in their individual capacities and on the plaintiff's claims for injunctive relief.

> **C.**    **The plaintiff's claims are barred under *Heck v. Humphrey*.**

The plaintiff's claims call into question the appropriateness of his disciplinary action, and request that the disciplinary action be removed from his institutional record. However, challenges to prison hearing procedures which necessarily imply the invalidity of the judgment must be pursued in habeas corpus.  *See Edwards v. Balisok,* 520 U.S. 641 (1997).  The plaintiff has not shown that his disciplinary action has been invalidated. Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's claims under section 1983 are barred.

<u>**RECOMMENDATION**</u>

For all of the reasons stated herein, it is respectfully **RECOMMENDED** that the defendants' Motion to Dismiss (ECF No. 14), which has been converted by the court to a Motion for Summary Judgment, be **GRANTED,** and that this matter be dismissed from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such

14

objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

September 25, 2013

Dwane L. Tinsley
United States Magistrate Judge